I'd like to reserve five minutes for rebuttal and I'll watch the clock. Okay, thank you. Two constitutional errors in this case require remand for a new trial. First, the Ferretta waiver issue. The record doesn't demonstrate that the waiver was knowing and intelligent. And second, Mr. Neidinger's right to present a meaningful defense at his second trial was violated by numerous of the court's rulings. Turning first to the Ferretta waiver of right to counsel issue, this court's case law is clear that we must draw every reasonable presumption against a valid waiver. And ambiguous answers result in an unknowing and intelligent waiver. Counsel, I respect your argument, but we hear it all the time, as you know. But in this case, Mr. Neidinger, he's pretty sophisticated. He's had two prior criminal offenses himself, if I understand correctly. And he even cited a case to the court that he thought would prove helpful. His whole defense relies on a pretty sophisticated argument. I'm struggling with how that's a Ferretta violation. Can you help me with that? What am I missing? Absolutely, Your Honor. I think that you have to consider the Haynes v. Kerner invocation in context of the advisements that were being given to Mr. Neidinger. So first turning at the record at ER 380, he was advised, similar to the script that's been approved in this court's case law as to the dangers and disadvantages of self-representation, that the prosecution will be skilled lawyers. There will be two of them. They will know what to do with opening. They will know how to admit evidence. They will know all of these trial disadvantages, trial-based disadvantages to self-representation. In response to that question, Mr. Neidinger said, I recognize what you're saying. I, of course, am going to preserve Haynes v. Kerner rights as far as being unschooled in the law. So I think while this court could draw an inference that maybe he had a very sophisticated understanding of the limited nature of a Haynes v. Kerner as to liberally construing pretrial motions, that's not the only reasonable inference or presumption you can draw from that, given the context of what he was responding to, which was trial-based rights. But if we were to agree with you, how could anybody who's given the right to represent him or herself not come back and say, you know, I just didn't understand. I had no real concept of how difficult the process is. You know, I was screwed over here. I need to get a new trial. So who couldn't say that? Well, I think this court's case law forecloses sort of after the fact regrets. Audet is probably the case most on point cited by the parties that this court held basically a confusing colloquy that was then ironed out by the district court during the canvas as to whether it was a voluntary choice to represent himself. Ultimately, it was an advised choice. There was time. There was follow-up questions. This court found regret about that decision later doesn't mean the colloquy is there. I'm not so much saying that. You've indicated that the court went through the normal spiel about basically saying you're really dumb if you want to represent yourself. You're really, really dumb. Are you sure you want to do that? You've got a well-educated guy in your client. He's been in the criminal process before. He cites a case, even though it may not have been cited with the lawyerly finesse that some people might have had. He got all of the information that he needed unless we reach the point where it's really impossible for someone who represents him or herself not to come back afterwards and say I didn't understand. Unless you want to do away with Faretta rights altogether. I have a question about his invocation of Haynes. Doesn't that, in fact, show that he was more sophisticated in his understanding of the law? I read the colloquy and how the district court judge did everything correctly and repeated and repeated and repeated. And you're right that several times Mr. Nettinger referenced, oh, but I'm reserving my Haynes rights. Well, I mean, aside from the fact that Haynes does talk about the pleadings, even just asserting it could be like creating a record that would create just the appellate argument that you're making right now. Well, there are two answers to that, Your Honor. I think that as far as the court's, I think, concerns about creating an impossible standard for a district court to get through a Faretta canvas, I don't think that's the case here. I think that a couple, maybe even just one follow-up question is to, Mr. Nettinger, what do you mean when you say I'm reserving a right under this 1972 Supreme Court case name? And if he clarified, you know, as we all understand as lawyers, the narrow right that that case provides, then we wouldn't be here. So then he does, then the judge does that and he gives us some kind of an answer and afterwards you say, you know, you can tell he's not learning in the law and that really screwed it up and therefore we're right back where we started from. I mean, it really seems to me you're saying nobody can really satisfy Faretta. No, I don't think so, Your Honor, because I think that what should have happened here with this Haynes v. Kerner blanket assertion without a true understanding of whether he understood the Supreme Court decision as a pro se person. What should have happened here is what happened with the voluntary aspect of the plea. The district court, there was some equivocation from Mr. Nettinger about whether this was a voluntary choice of his free will because the tension, I'm sure, the court sees often where he wants to present a defense that is lawyerable or not, but he would prefer to have a lawyer, so that's a struggle. The court on its own asked some follow-up to pin down that this, what you're saying is not it's coerced, it's just you wish you had a world where you could have both, but you can't. Okay, well then I choose to represent myself. The government even was concerned with, you know, that aspect of the canvas and asked the court to, you know, one more time to go back over it and the court did and that's what this court's case law requires. So the voluntariness of the plea is not an issue because the court did exactly what needed to be done, which is responding to the defendant's answers in real time. I do understand it can be difficult with FRERETA, but this court's case law is very clear that it is on, it is probably the only area where it is just the utmost duty on the district court to just listen to the answers and ask some follow-up questions where needed. You're saying that when the judge is doing a FRERETA discussion with the defendant and the defendant raises a case that he cites during this discussion, then the judge has to ask the defendant if he's read the case and go through that, even though it may not be something that is applicable? I'm not sure. I mean, this court does not, of course, write scripts, you know, mandatory scripts for FRERETA, but I think that . . . Well, let me ask you, what should a judge do during a FRERETA discussion when the defendant raises a case? You're saying that every time that he needs to get the case out and have the defendant review it and ask him, do you understand what this case means? What does it end? I think it's less about what the case means and it's more about what the defendant believes they are trying to invoke. This court's case . . . Well, let me ask you that. During the discussion, he at least four times referenced Taines v. Kerner. Was his reference in the discussion inaccurate, mistaken, out of context? Is that what you're saying? It was incomplete. It was just a general invocation of a reserving Haines v. Kerner rights. And . . . Well, let me ask you this. He was accurate. He has those rights, right? This court has recognized that at least the liberal pleading standard would apply to a motion to dismiss under Rule 12, the pretrial motion. It was accurate. It wasn't mistaken, right? Well, if that was the defendant's understanding of the right, that it was limited to that, that wouldn't have been an issue here. And that's why I just . . . Then it wouldn't have been applicable either, right? Because this is a criminal proceeding, and what we're talking about is civil pleadings. Well, I actually think that that cuts in . . . That's another problem. Yes, I'm pointing that out to you. Yes, Your Honor. Thank you. Yes, of course. I think that it is hard to disentangle our legal knowledge from we know this line of case law that it has now been applied. But if you just take Haines v. Kerner for what it is, which is a general pleading standard for Pro Se, either 2254 or prisoner rights litigation, that's generally where this comes up. So I think that just further goes to show that he may have been sophisticated and this may have been a non-issue, but we can't speculate that it wasn't an issue without an actual record citation, something to concrete in the record that this waiver is valid. I do understand the Court's concerns about creating an impossible FREDA standard, but we're not asking for a new rule. The case law is already pretty strict, that the Court just needs to respond to what is being said by the defendant. The inquiry is on what the defendant understood, not what the Court said. And in this case, you agree that voluntariness is not an issue because the Court did what it was supposed to. What did the Court not do here that you believe overturns this based on FREDA? I believe it would just be a simple follow-up question, maybe two, depending on the answer. What do you mean? What do you mean when you say you're reserving rights under Haynes v. Kern? And he said, I had a dream last night, and God told me that Haynes was the case. Then what do you do? The Court would do what district courts are well-versed in doing in FREDA, which is to advise the defendant that that's not a valid right that you're reserving, that you're waiving these things. So then the FREDA becomes a psychological examination, and you postpone everything for a psychological examination. Is that right? Well, I would submit, Your Honor, like sometimes they do become that. And if a defendant is too unruly and cannot understand the rights, the district court can reject it. So I think underlying a lot of the Court's questions are maybe some sort of combative defendant who's trying to create problems instead of genuinely trying to represent themselves. I can't speak for my colleagues, but to me what you're proposing basically renders FREDA a nullity. I don't see how our system can operate on the basis of self-defense if they have to do what you're talking about, because otherwise you get into psychological examinations, maybe how sophisticated they are. Is there a sophistication examination that we could provide and have them do 100 bar exam questions and see how well they do? Is that what we're looking at? No, Your Honor. I think the simple question would have been, what do you mean when you are reserving this right? And if his answer is unequivocal and cannot be made unequivocal, then the Court can't accept the FREDA. And that is the state of the law. But again, we're in a world of hypotheticals, but we have to look at what the actual record demonstrates here. And because there are different inferences that can be drawn both ways, the Court is instructed that you have to presume all inferences against waiver. And unfortunately we didn't have a waiver or a colloquy on this as we did on the voluntary, so this would need to go back on the going part. Do you want to turn to your other argument, the complete defense? You're running out of time. Yes, Your Honor. Thank you so much. Quickly, because I believe it's briefed at very detail by both parties, that numerous of the district court's rulings during the second trial violated Mr. Nidinger's right to present a defense. I'd like to specifically highlight two instances during the trial where the Court made comments that really prejudiced Nidinger and precluded his defense. At ER 62 and 63, the Court stated, quote, your state of mind is irrelevant. Specifically at page 63, the Court said, what your subjective belief is is irrelevant. The issue in this case is whether or not you intentionally put, whether it was you, and whether you intentionally put that information on the form. So the Court's instructions during trial in front of the jury while Mr. Nidinger was attempting to present his defense were erroneous. Of course state of mind is relevant in anything but a strict liability offense, regardless of how persuasive the Court thinks that a mens rea defense is. So those are problematic statements early on in the trial, priming the jury that you can't consider anything about his mental state. But with respect, Counsel, Mr. Nidinger had an opportunity to present, from my perspective, all of the things he wanted to, including the little booklet. And what his defense was was well communicated to the jury. If he had been able to do that, I would get your point. But, I mean, the judge talked about the mens rea, as to what he thought. But at the end of the very sentence that you quoted, it was clear that what he thought by putting it down was relevant. So I'm struggling with how that is a really prejudicial error, if an error it was. Yes, and I have two answers to your honor. First, that we have to consider not just what was presented, but what the jury was told it was allowed to consider. And second, he wasn't allowed to present his corroborating evidence for this defense that the District Court and government found unusual. So first, with the instructions, it doesn't matter. I think the government devotes a lot of time to the closing arguments and other aspects. Well, that only matters if the jury is instructed you can consider this as a defense. And the instructions during trial and taken with the final instruction precluded meaningful deliberations on that specific mens rea defense. And then, of course, we have the issue with the after hours admission of his corroborating exhibit of the handbook. And I know he was able to testify as to the handbook. It's not the same as the jury saying that it exists and that it's a published document. And I know the court reconsidered off the record and threw it into the exhibit pile the next morning. But that's a problem because Mr. Nightingale wasn't able to actually present that defense to the jury. And we don't know if the jury considered it in deliberations. So I see I am well past my time. Thank you very much, Your Honors. Good morning, Your Honors, and may it please the court. Mariette Peltier on behalf of the United States. I'd like to pick up where you left off with defense counsel on the FREDA issue to start. The defendant's waiver of counsel here was knowing and intelligent. We know that each time he mentions Haynes versus Kerner rights, it was done appropriately. It was done in an appropriate context. And he never suggested that he was confused about what that case stood for or that he had a mistaken understanding of what that case stood for. So we can walk through those four instances where he invoked Haynes. And I think that that will make this point quite clear. In three of those, in response to three questions about not receiving special privileges from the court, he responded, I recognize that, or some variation of that, but Haynes versus Kerner allowances. That's an entirely appropriate context to invoke Haynes because Haynes does, in fact, provide this limited allowance for pro se litigants, including criminal defendants, as this court recognized in the United States versus Quasi just a few years ago. The last time, as counsel pointed out, it was in response to a bench book question that the district court asked about numerous skills that the prosecutors on the case would have and that the defendant would be at a disadvantage for not having. One of those skills was what evidence is admissible. One of those skills was what motions should be brought during and before trial. And both of those are places where this Haynes privilege could have applied, in a written motion, of course, to construe it liberally, but also because evidence admissibility is often decided through motion in limines prior to trial. I think it's also helpful to touch on the voluntariness discussion that you spoke about with defense counsel. There, the defendant showed that when he was confused, when he was mistaken, or he thought that the court's questions were imprecise or unclear, he was willing to push back. He was willing to disagree. He was willing to provide greater context in his answers. And the district court then, you know, noticed the ambiguity in those responses and did follow up appropriately. So one example of that can be found on page 386 of the record, where the district court asked, is your decision voluntary to represent yourself? Is that a voluntary decision? And the defendant responded, in the overall context, no. Specifically, yes. And the court followed up, because that was an ambiguous response. That should have been a red flag, and said, why is it no in the overall context? And that's repeated over and over throughout this voluntariness discussion, where the defendant is clear when he is confused or he disagrees, and the district court then appropriately follows up. I think it's important to note, as it seems like your honors understand, that the FREDA colloquy can be difficult for district courts. It can be particularly difficult if the defendant purports to have legal knowledge. And it is important that we realize that this is a balance between two constitutional rights here. There's the constitutional right to self-representation, and there's also the constitutional right to the assistance of counsel. And so we can't make the standards so unattainably high to prohibit self-representation, because that would be structural error. But it would also be structural error to erroneously grant self-representation. And so we're really asking district courts to walk this fine line between these two constitutional rights. And the defendant hasn't pointed to a single case in which a situation like this, where the record does appear clear, there's no indication that the case was invoked incorrectly. And there's no case from this circuit that suggests that would hold a FREDA waiver to be invalid. I think we can contrast that with United States v. Hansen, which is the case from the Tenth Circuit we cited in our brief. In that case, in response to a question from the court about the obligation to follow the same rules as represented litigants, the defendant first said, yes, he understood. In response to a similar question, he then said, no, he didn't understand. When the district court then followed up, because that was an appropriate red flag that it knew it had to follow up on, the defendant instead said something entirely different, something like, I can't represent myself because I am myself. And then when the government brought it up to the district court's attention that this needed to be followed up on a fourth time, the defendant then denied that he had said no to the question previously and then went off on another non sequitur unrelated to his obligations to follow the rules. That is the sort of case that provides ambiguity sufficient to hold that a FREDA waiver is invalid. And I would just like to take a step back. The question here is not whether the defendant had perfect technical legal knowledge of Haynes v. Karner and what it stood for. FREDA itself says that the defendant in FREDA didn't need to understand the intricacies of the hearsay rule. He didn't need to understand all of the sorts of challenges that he could bring to prospective jurors in the jury pool during voir dire. That wasn't a part of what made his waiver of counsel knowing and intelligent. Similarly, when a district court asks the defendant if he understands that he has to follow the federal rules of evidence and the defendant says yes, that tends to be enough. The district court doesn't then have to look beyond the scope of the defendant's answer to ask, oh, are you sure you understand that the federal rules of evidence applies both to electronic exhibits and to physical exhibits, or it applies to both relevancy and to hearsay. The district court takes the defendant's yes as a yes. I think that that applies perfectly to this case. And just taking a step back, the question is whether the defendant understood the importance of having counsel, and here the record is very clear that he responded affirmatively to many questions where the district court asked him exactly that. If the court has no further questions on the Feretta waiver, then I will move to the constitutional right to present a defense. Picking up on the comments that my colleague cited on pages 62 and 63 of the record, I think it's important to note that it's a little bit imprecise what the district court was getting at here. In the midst of this colloquy, the court says, neither the intent to violate the law nor the intent to defraud are required elements of passport application fraud under Section 1542. And immediately after saying that the only question here is whether the defendant intentionally put this statement down on the form, he follows up and says, and not whether or not he got permission to do so. The district court may have been trying to get at this fine line between authorization not being a complete defense and the fact that it might not totally negate knowledge of falsity. It may have done so imprecisely with its language. But as I think it was Judge Smith indicated, that did not preclude the defendant from putting forth his whole meaningful defense. As our brief states, the defendant was able to testify extensively about the handbook. He read it verbatim into the record. He was permitted to testify about how he relied on it. He testified generally about the blog post and about how it increased his confidence level once he found that blog post. So I found it a little troubling that at first the district court did not admit the book in front of the jury. And they knew of that ruling. And then off the record admitted the book and sent it into the jury room. So what was the jury supposed to make of that? Yes, Your Honor. So my understanding from talking to the trial prosecutors at this case is that at the end of the trial day on the second day, the defense tried again to move the handbook into evidence. And the government withdrew its objection or didn't object. And that is how this apparently was off the record. There is no transcript of this. And this is just my understanding from the trial prosecutors. So apparently that is how this ended up being revisited on the transcript the next morning. My understanding is that this isn't uncommon in district courts, that sometimes an exhibit will be shown and it won't be fully admitted, that you'll show it and you'll ask the foundation questions and counsel may forget to say, Your Honor, may I have exhibit 15 admitted? And then during a cleanup period at the end of trial. Are you saying that that's what happened here? That's not what happened here, Your Honor. Why are we talking about your understanding of what happens before actual district court judges? Sure, I'm saying that. Judge Reyes is a current district court judge and I was a district court judge previously, so I think we have an idea. Yes, Your Honor. I'm just suggesting that there's no case law here if this is a practice that does occur, that sometimes exhibits are admitted outside the presence of the jury. But this was his key thing that he was relying on as his defense, and obviously the authorization wasn't sufficient, but this was the whole basis of his defense, right? Yes, Your Honor. This was the basis of his defense. As I said, he was permitted to read it verbatim to the jury. The district court in front of the jury said on pages, I believe it's somewhere between 79 and 82, quote, he can read what it says and whether or not he relied on it. Both parties appear to have shown the excerpt of the handbook to the jury during closing arguments and no one objected and the district court didn't interrupt either. And I would note that the parties in the district court hadn't been reluctant up until that point to object when they felt like improper evidence was being admitted into the record. Counsel, I want to be sure I understand your answer to Judge Wardlaw's question. Yes. You, if I understood correctly, originally said that based on off-the-record information you understood from trial counsel that on the second day or whatever it was of the trial that the defense once again moved to put the book into evidence. The government did not object. I thought you said that wasn't so when you talked to Judge Wardlaw. You're saying that's what you understood occurred, right? That has been what has been represented to me. Okay, all right. So for our purposes, it's not in the record. We don't know that. That's correct. But they had it. Both sides referred to the book and its contents and Mr. Neidiger actually read verbatim from the book, right? Yes, Your Honor. Okay, all right. Thank you. And just one other question I had. How did the district court respond to the two jury questions? So the jury question about the deceased social security number is the name? There were two. How does a U.S. citizen change their name slash social security number? And then can a U.S. citizen claim that their name slash social security number is deceased without a death certificate? Yes, Your Honor. So there were two questions. I want to clarify they came on the same note. Right. I'm reading from the same document. Yes. My understanding is that there was no response to that from the district court. I didn't see a discussion of that in the record even with the parties. I will note that this note came prior to deliberations and prior to the jury being instructed. And so the proper jury instructions were then provided, and the parties then made their closing arguments about what the proper defense was based on those instructions. Those instructions, if they suggest confusion about anything, they suggest confusion about the legal standard that would have applied to the defendant's defense. So basically, is there such a legal thing as having a deceased social security number or name? They don't suggest that there was any confusion about what the jury had to decide in order to find the defendant guilty. That was very clear that they were focusing on the February 2018 passport application. I can speak a little bit more about the jury unanimity issue if that would be helpful. The government finds United States v. McCormick to be particularly helpful and instructive here. There, the court said that a specific unanimity instruction wasn't required because there was no requirement that there be consensus on a particular false statement. It cited Schad v. Arizona, which is a Supreme Court case, to suggest that each false statement was a means of committing an offense, not a separate offense itself. And so from McCormick, we see that just the fact that multiple statements are charged in a single 1542 count doesn't alone require a specific unanimity instruction. And as our brief sets out in further detail, there's no additional indication that the jury was confused, that they were supposed to decide the defendant's factual guilt based on the February 2018 passport application and the statements that were within. If there are no further questions, the government will rest on our arguments in the brief, and we respectfully ask that you affirm the defendant's conviction and sentence. All right. Thank you, counsel. There was a lot there. I'll give you a couple minutes for rebuttal. Thank you, Your Honor. I appreciate that. So I think two quick points on rebuttal is that, first, the court did not address the juror notes in the record with the parties or the jury. It doesn't appear that it was ever explored. And the record doesn't demonstrate whether the notes were given to the parties or not, so we just don't know either way. So that's yet another strange aspect of this trial with potential off-the-record issues that we don't know about that would give us maybe more insight into the jury. And second, putting forth a defense is meaningless if the jury's instructed that it can't consider that defense or at least is given confusing instructions about how to consider that defense, and if the defendant also can't corroborate that defense with court-admitted evidence. Counsel, that's confusing to me because your client read that evidence himself into the record. Are you suggesting that the court somehow confused the jury on whether it could consider what your client read into the record as the basis for his action, what he relied upon? Well, there's two things here. I think that first there's the problem with the final and jury instructions and the instructions given during trial as to whether you can even consider his mental state as to whether he made false statements or not. So this jury would have at the least been confused as to is this state-of-mind defense something I can consider or not, regardless of what's happened. When you say instructions given during the trial, you're talking about an offhand comment the judge made. It wasn't an instruction to the jury, was it? I agree. Yes, it was not a formal instruction as far as the record shows. I instruct you X, Y, Z. But it was much more than just an offhand comment or a ruling on an objection for relevancy. The district court interrupted Mr. Nidinger, said, your state of mind is irrelevant. The only thing that is relevant is whether it was you and whether you put the information on that form, whether you put your information on the form. And I apologize, it was the quote I gave earlier. That's much more than just sort of a commonplace ruling that the jury wouldn't feel instructed by. Whether you intended to put that information on the form? Is that what he said? Yes. No, it was just whether you did so. Okay. And that's the thing is that I just think that there was just overreach here. The district court interfered too much with Mr. Nidinger's defense. It is not for any judge to decide whether the defense is persuasive or going to be found credible. And all Mr. Nidinger asked for a chance to present it. As to the book, the book was read from during the trial. Yes. And the jury was informed what the book was that he was reading from. True? Yes. What was in the book that was not presented in Mr. Nidinger's testimony? The page, the relevant page of the book was read from. The exhibit had the cover, I think the publisher page, and then the excerpt. Was there something in the book that he wanted to present that he didn't present in trial in his own testimony? Not substantively, but it just showed, concreted the existence of this book so that the jury wasn't forced to just rely only on Mr. Nidinger's testimony. And I understand the court saying, you know, it's strange. The whole exhibit was read. Why wasn't it just admitted at that point? And I don't think we're splitting hairs here. That is the jury, juries are instructed that you're only to consider testimony and evidence properly admitted by the court. And when the whole defense hinges on Mr. Nidinger's credibility as to his state of mind, it is important to have a corroborating exhibit even if it was otherwise read in front of the jury, only by him, though. So, again, it all hinges on his credibility. And I see I'm well over my time again, so I appreciate your Honor's extra time. We request the court remand for a new trial. Thank you very much, counsel. U.S. v. Nidinger is submitted, and we'll take it.
judges: WARDLAW, SMITH, Rayes